## UNITED STATES v. WHEELING DOWNS, Inc., et al.

### Civ. A. No. 164–E.

District Court, N. D. West Virginia

Aug. 15, 1947.

C. Lee Spillers, U. S. Atty., of Wheeling, W. Va., and Wayne T. Brooks, Asst. U. S. Atty., of Wheeling, W. Va., for plaintiff.

Carl G. Bachmann, Gilbert S. Bachmann and Carl B. Galbraith, all of Wheeling, W. Va., for defendants.

BAKER, District Judge.

1. On November 21, 1946, an application for a permit to contruct certain buildings was made by Wheeling Downs, Inc., of Wheeling, West Virginia, to the Civilian Production Administration, Area Office, for

the State of West Virginia, which office received the application on November 25, 1946. In support of the application there was subsequently forwarded to the same office letters from contractors, material men, representatives of organized labor, and representatives of veterans' organizations, which were to the effect that the proposed construction would have no impact on the veterans' housing program in the area because of there being available in abundant supply all of the material to be used in the proposed construction, that there was very little veterans' housing being built in and about Wheeling, and that there was an increasing unemployment of skilled and semi-skilled labor which would be employed on the project, and that the existent barns and facilities at the Wheeling Downs property were health and fire hazards.

2. Pursuant to the regulations (Federal Register September 11, 1946, Pg. 177A-380, Par. 904.203(c) "In considering such cases a field office is usually advised by a local construction committee whose chairman is a Civilian Production Administration employee and whose membership is representative of the major interests of the community," the District Manager, A. H. Cooper, received on December 3, 1946, at the Civilian Production Administration office, a letter dated December 2, 1946, from Walter W. Seabright, Chairman of the local [Ohio County] committee, which stated in part "We have had a meeting of the committee, and they have unanimously approved this project under 'H' no impact on the veteran's housing program."

3. A. H. Cooper also received a letter dated December 13, 1946, from West Virginia State Employment Service which, in substance, stated that there was an increasing unemployment in skilled and semi-skilled trades, and at that time there were 2,200 persons unemployed in the Wheeling area.

4. By letter dated December 27, 1946, which was addressed "Mr. Walter W. Seabright, Chairman Area Committee—OTC-C PA," Cooper, writing on the subject "William G. Lias Application, Wheeling, West Virginia, re Concrete Block Stable," stated, "The above mentioned application is being returned herewith to you, as rejected. Rejection action is based on the fact that documentary evidence has not been produced from the health authorities of Wheeling as to condemnation by that office re public health and safety. If it is the desire of the applicant to furnish such evidence, upon receipt of same this office will reconsider the case."

5. On April 17, 1947, Wheeling Downs, Inc., and its employees and agents learned for the first time that an investigation was being conducted of the construction then being carried on at its property on Wheeling Island.

6. Wheeling Downs' agents began an investigation and ascertained that the letter of December 27, 1946, from A. H. Cooper to Walter W. Seabright had remained unopened in Seabright's files until the 24th day of April, 1947, at which time Seabright found it, opened it, and delivered it to agents of Wheeling Downs.

7. On April 24, 1947, Wheeling Downs, Inc., received the telegram, the original of which is Exhibit No. 34 and a copy of which is also part of Exhibit No. 1. On April 25, 1947, Carl B. Galbraith, attorney for Wheeling Downs, Inc., went to the Regional Compliance Office of the Office of Housing Expediter in Cleveland, Ohio, to comply with the suggestions set forth in the telegram, Exhibit No. 34, "Should you desire to apply for authorization for project, you may get instructions from the OHE Non-residential Construction Division, 401 Virginian Building, Capitol and Kanawha Boulevard, Charleston, West Virginia," and, further, "If you deny violation, an early hearing before a compliance commissioner will be arranged by the undersigned at OHE Compliance Office."

8. Galbraith was advised by Leonard Dudley, Regional Compliance Director, that because of the incomplete status of the investigation being made the hearing offered in the telegram could not be had.

9. During the week of May 2, 1947, Galbraith had several conferences in Wheeling, West Virginia, with representatives of the Compliance Division of the OHE and, on May 8, 1947, apparently having concluded that his efforts in Cleveland and in the

884

Wheeling conferences were not fruitful, went to the office of the Housing Expediter, Hon. Frank Creedon, in Washington, D. C. where he obtained an interview with a Mr. Hurley, Special Assistant to Mr. Creedon, in the absence of the latter. At this time Galbraith related the full history of the application of Wheeling Downs, Inc., from its inception to that date, and was assured that an early hearing would be granted at the Cleveland office.

10. Galbraith then contacted Mr. Dudley, the Regional Compliance Director at the Cleveland office, to ascertain the date upon which the promised hearing was to be held, and learned that no definite date had been set, but was told that he would subsequently be notified, which notification neither he nor his client, the applicant, ever received.

11. Galbraith's frequent requests of representatives of the Housing Expediter for a copy of the rules of procedure of the OHE were answered with the statement that the rules would be given to him at the time the hearing was had. Galbraith never was provided with any copy of the rules.

12. On June 4, 1947, an application was made to this court for temporary restraining order to restrain the defendants from construction then alleged to be under way at its property on Wheeling Island.

### Conclusions and Opinion

The court is of the opinion that Wheeling Downs, Inc., and its agents sought all possible proper means to exhaust their administrative remedies, and were prevented the opportunity to exhaust these remedies in a fashion which to the court appears to be arbitrary and capricious, and in complete disregard of the procedural due process adopted by the Civilian Production Administration and set forth in the Federal Register. Federal Register September 11, 1946, Pg. 177A-372, Part 903 et seq.

The court's equity powers may be invoked to review the action of an administrative agency which is shown to be outside the scope of its authority. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Process in this case was properly served by the defendants on the United States at the time defendants sought this review under the then existing Section 1826 of Title 50 U.S.C.A. War App., and having invoked equity jurisdiction of the court which was not created by that section this jurisdiction continues without regard to the repeal of that section, and this request for review having been served by the defendants on the United States Attorney as part of their answer during the then pending injunction suit properly brings the United States before the court at this time. Jones v. Watts, 5 Cir., 142 F.2d 575, at page 577, 163 A.L.R. 240.

This court is of the opinion that throughout the period in question there was an ample supply of building materials of the kind used in the construction at Wheeling Downs. The use of these materials did not have a detrimental effect upon the building of housing facilities for veterans, and did not create any impact on the veterans' housing program. There was also an increasing unemployment among the skilled and semi-skilled trades, which unemployment in the Wheeling area was partly absorbed by this construction.

Mr. A. H. Cooper, District Manager of the State of West Virginia area of the Office of Temporary Controls, in considering Wheeling Downs' application, had before him evidence of this unemployment and had before him some evidence of the ample supply of materials for this project and that it would not create an impact on the veterans' housing program. He had before him no evidence to contradict this situation and apparently, at the most, not sufficient evidence to persuade him to deny the application. He also had before him the fact that the local [Ohio County] construction committee had unanimously approved the application. Cooper did not deny the application, but took the first step in the series of steps which followed, which were outside the authority of this administratve office. The application was not denied, but was returned to Walter W. Seabright, the local construction committee chairman. Adherence to the regulations permitted Cooper only to approve or deny, and in rejecting he did neither. Federal Register September 11, 1946, Pg. 177A-375, Par. 903.-211(c) (1) 4(2). This action was not com-

municated to the applicant but to Seabright, the local construction committee chairman, who, by the regulations, was a representative of the United States Government, a Civilian Production Administration employee. Federal Register, September 11, 1946, Pg. 177A-380, Par. 904.203(c). Notice to Seabright cannot be held to be notice to the applicant, either actual or constructive. Seabright retained the letter until April 24, 1947, at which time it was first communicated to the applicant. Had Seabright communicated the contents of the letter to the applicant promptly upon his receipt of the letter, the evidence now before the court would have been communicated to Cooper, and on this evidence he could have properly done nothing other than grant the application.

Thus the steps taken by Cooper and Seabright deprived Wheeling Downs, Inc., of the proper consideration of its application and of the evidence which conclusively shows its entitlement to the granting of the application. It is not the manual possession of a permit on paper which is determinative of the subject of this inquiry, but the facts as to whether Wheeling Downs, Inc., was so entitled. These facts demonstrate that this corporation was at all times entitled to begin, carry on, and complete, this construction, and that a permit would have been issued to it had officers of the Government proceeded in accordance with the regulations governing application for and issuance of such permit.

The court is constrained to note in passing that the benevolent policy of the Congress to balance the availability of materials for home construction for veterans against the construction of other projects which would have no detrimental effect upon the veterans' housing program was committed by Congress to an administrative agency, it being a matter which the Congress obviously could not administer. Rights of individuals and corporations, vested financial interests, economic progress, employment and subsistence, were all inherent in the administration of this program. The courts were, to a large extent, excluded, and properly so, so long as the prescribed procedure was adhered to. We find in the present litigation a disregard for nearly all of the procedural requirements set forth in the Federal Register—a corporation which seeks to build imperiled with criminal prosecution, an attorney who seeks to prepare his client's case repeatedly told that he will be informed as to the rules of procedure immediately before a hearing begins and thus afforded no time to prepare for the hearing, a letter upon which hinged the whole subject of this litigation and all its ramifications lost for a period of four months by a representative of the Government, failure to afford elemental requirements of due process in giving an administrative hearing, and in fact, a general misuse of its delegated authority as an administrative agency.

These proceedings were substantially devoid of an adherence to our fundamental principle of government of delegated powers. I fail to find in any of the proceedings prior to the filing of the injunction suit that adherence to right, justice, and, I might say, courtesy, to which a citizen is entitled from representatives of the Government. We have witnessed the growth of what is called by some the fourth branch of the Government, the administrative agency group. If administrative agencies are to seek resort to this court or to other courts of this land to enforce their ukase they shall have to demonstrate that they have complied with the law which gave them birth. This court will never be used as an upper tribunal of an administrative agency but will always be mindful of the reason for its creation, to balance the rights of an individual and his government in accordance with law and justice.

For reasons assigned, plaintiff's motion to dismiss defendants' demand for review is denied. I hold that the manner in which the Housing Expediter acted in rejecting the application of Wheeling Downs, Inc., and in refusing administrative relief was beyond its delegated authority as an administrative agency, and constituted a denial of due process of law under the Fourteenth Amendment. Within the limits of the record on review, defendants are in violation of no lawful order or regulation of the Office of Housing Expediter.